## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TENNESSEE
## WESTERN DIVISION

| | |
|---|---|
| THOMAS W. HASTINGS, | ) |
| | ) |
|     Plaintiff, | ) |
| | ) |
| v. | )    16-cv-1083-TMP |
| | ) |
| CAROLYN W. COLVIN, | ) |
| COMMISSIONER OF SOCIAL | ) |
| SECURITY, | ) |
| | ) |
|     Defendant. | ) |

## ORDER AFFIRMING THE COMMISSIONER'S DECISION

Before the court is plaintiff Thomas W. Hastings's appeal from a final decision of the Commissioner of Social Security[1] ("Commissioner") denying his application for disability insurance benefits under Title II of the Social Security Act ("Act"), 42 U.S.C. §§ 401 et seq. On July 20, 2016, the parties consented to the jurisdiction of the United States magistrate judge pursuant to 28 U.S.C. § 636(c). (ECF No. 34.) This case was subsequently reassigned to the undersigned on March 13, 2017. For the reasons set forth below, the decision of the Commissioner is affirmed.

## I.    PROCEDURAL HISTORY

---

[1]Carolyn W. Colvin was the Acting Commissioner of Social Security at the time this case was filed.

On October 5, 2010, Hastings filed for disability benefits under Title II of the Act. (R. at 70, 169–73.) Hastings initially alleged disability beginning March 13, 2013, due to HNP cervical, HNP Lumbar, a fractured clavicle, bone spurs, bipolar disorder, and ADHD.[2] (R. at 70.) Hastings's last date insured was December 31, 2014. (Id.) The SSA denied this application initially and upon reconsideration. (R. at 80, 94.) At Hastings's request, a hearing was held before an Administrative Law Judge ("ALJ") on November 14, 2012. (R. at 35.) On November 21, 2012, the ALJ issued a decision denying Hastings's request for benefits after finding that he was not under a disability because he retained the residual functional capacity ("RFC") to perform jobs that exist in significant numbers in the national economy. (R. at 16–32.) On May 7, 2014, the SSA's Appeals Council denied Hastings's request for review. (R. at 8.) Therefore, the ALJ's decision became the final decision for the Commissioner. (Id.) Subsequently, on March 9, 2015, Hastings filed the instant action in the Central District of California. (ECF No. 1.) The matter was transferred to this court on April 29, 2016. (ECF Nos. 21, 22.) Hastings argues that (1) the ALJ gave improper weight to the opinions of the medical sources in the record, and (2) the ALJ

_____

[2]Hastings has since stated that it was erroneous to allege disability due to bipolar disorder and ADHD and conceded that he is not disabled on those grounds. (R. at 36, 57.)

erred by finding that Hastings's description of the severity of his condition was not entirely credible. (ECF No. 35.)

## II. CONCLUSIONS OF LAW

### A. Standard of Review

Under 42 U.S.C. § 405(g), a claimant may obtain judicial review of any final decision made by the Commissioner after a hearing to which she or he was a party. "The court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). Judicial review of the Commissioner's decision is limited to whether there is substantial evidence to support the decision and whether the Commissioner used the proper legal criteria in making the decision. Id.; Burton v. Comm'r of Soc. Sec., 690 F. App'x 398, 400 (6th Cir. 2017); Cole v. Astrue, 661 F.3d 931, 937 (6th Cir. 2011); Rogers v. Comm'r of Soc. Sec., 486 F.3d 234, 241 (6th Cir. 2007). Substantial evidence is more than a scintilla of evidence but less than a preponderance, and is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Kirk v. Sec'y of Health & Human Servs., 667 F.2d 524, 535 (6th Cir. 1981) (quoting Richardson v. Perales, 402 U.S. 389, 401 (1971)).

In determining whether substantial evidence exists, the reviewing court must examine the evidence in the record as a whole and "must 'take into account whatever in the record fairly detracts from its weight.'" Abbott v. Sullivan, 905 F.2d 918, 923 (6th Cir. 1990) (quoting Garner v. Heckler, 745 F.2d 383, 388 (6th Cir. 1984)). If substantial evidence is found to support the Commissioner's decision, however, the court must affirm that decision and "may not even inquire whether the record could support a decision the other way." Barker v. Shalala, 40 F.3d 789, 794 (6th Cir. 1994) (quoting Smith v. Sec'y of Health & Human Servs., 893 F.2d 106, 108 (6th Cir. 1989)). Similarly, the court may "not try the case de novo, resolve conflicts in the evidence or decide questions of credibility." Ulman v. Comm'r of Soc. Sec., 693 F.3d 709, 713 (6th Cir. 2012) (quoting Bass v. McMahon, 499 F.3d 506, 509 (6th Cir. 2007)). The Commissioner, not the court, is charged with the duty to weigh the evidence and to resolve material conflicts in the testimony. Walters v. Comm'r of Soc. Sec., 127 F.3d 525, 528 (6th Cir. 1997); Crum v. Sullivan, 921 F.2d 642, 644 (6th Cir. 1990); Prater v. Comm'r of Soc. Sec., No. 114CV01221STATMP, 2017 WL 2929479, at *1 (W.D. Tenn. July 10, 2017).

**B.  The Five-Step Analysis**

The Act defines disability as the "inability to engage in any substantial gainful activity by reason of any medically

determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1). Additionally, section 423(d)(2) of the Act states,

> An individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work. For purposes of the preceding sentence (with respect to any individual), "work which exists in the national economy" means work which exists in significant numbers either in the region where such individual lives or in several regions of the country.

Under the Act, the claimant bears the ultimate burden of establishing an entitlement to benefits. Oliver v. Comm'r of Soc. Sec., 415 F. App'x 681, 682 (6th Cir. 2011). The initial burden is on the claimants to prove they have a disability as defined by the Act. Siebert v. Comm'r of Soc. Sec., 105 F. App'x 744, 746 (6th Cir. 2004) (citing Walters, 127 F.3d at 529); see also Born v. Sec'y of Health & Human Servs., 923 F.2d 1168, 1173 (6th Cir. 1990). If the claimant is able to do so, the burden then shifts to the Commissioner to demonstrate the

existence of available employment compatible with the claimant's disability and background. <u>Born</u>, 923 F.2d at 1173; <u>see also</u> <u>Griffith v. Comm'r of Soc. Sec.</u>, 582 F. App'x 555, 559 (6th Cir. 2014).

Entitlement to social security benefits is determined by a five-step sequential analysis set forth in the Social Security Regulations. <u>See</u> 20 C.F.R. § 404.1520. First, the claimant must not be engaged in substantial gainful activity. <u>See</u> 20 C.F.R. § 404.1520(b). Second, a finding must be made that the claimant suffers from a severe impairment. 20 C.F.R. § 404.1520(a)(4)(ii). In the third step, the ALJ determines whether the impairment meets or equals the severity criteria set forth in the Listing of Impairments contained in the Social Security Regulations. <u>See</u> 20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526. If the impairment satisfies the criteria for a listed impairment, the claimant is considered to be disabled. On the other hand, if the claimant's impairment does not meet or equal a listed impairment, the ALJ must undertake the fourth step in the analysis and determine whether the claimant has the RFC to return to any past relevant work. <u>See</u> 20 C.F.R. § 404.1520(a)(4)(iv), (e). If the ALJ determines that the claimant can return to past relevant work, then a finding of not disabled must be entered. <u>Id.</u> But if the ALJ finds the claimant unable to perform past relevant work, then at the fifth

step the ALJ must determine whether the claimant can perform
other work existing in significant numbers in the national
economy. See 20 C.F.R. § 404.1520(a)(4)(v), (g). Further
review is not necessary if it is determined that an individual
is not disabled at any point in this sequential analysis.
20 C.F.R. § 404.1520(a)(4).

## C.   Assessment of Dr. Reddy's Opinion

Hastings argues the ALJ should have adopted Dr. Reddy's
opinion that he could not lift or carry more than ten pounds.
On March 13, 2010, Hastings had an accident on his dirt bike and
went to an emergency room where he learned that he had fractured
his right clavicle. (R. at 254–55.) Over the next year and a
half, Hastings underwent two surgeries on his clavicle and
visited a number of doctors, complaining of ongoing pain in his
right shoulder, neck, back, left hip, and left knee. (R. at
260, 284, 289, 306–07, 320.) On April 25, 2011, shortly after
his second surgery, Hastings received a consultative examination
from Terrance Flanagan, M.D. (R. at 267.) During this exam
Hastings described all of his symptoms to Dr. Flanagan and
reported that his neck and back pains worsened with sitting,
standing, walking, bending, and lifting. (R. at 268.) Hastings
also described his right shoulder pain as exacerbated by
reaching, lifting, or carrying. (Id.) Dr. Flanagan observed
that Hastings could sit, stand, rise from a chair, and walk

without difficulty.  (R. at 269.)  His examination of Hastings's neck was normal, but when examining Hastings's back Dr. Flanagan observed tenderness around his lumbar area and pain with trunk rotation.  (Id.)  Hastings's forward flexion was 60° with indications of pain.  (Id.)  His right shoulder had a flexion of 20°, internal rotation of 50°, and external rotation of 20°.  (R. at 270.)  Dr. Flanagan also observed that Hastings was guarding his right shoulder, leaving the "true range of motion" uncertain.  (Id.)  Dr. Flanagan opined that, assuming the clavicle healed properly, Hastings could lift and carry twenty pounds occasionally and ten pounds frequently with his right arm and had no other limitations.  (R. at 272.)

In May of 2011, x-rays of Hastings's cervical spine and left knee showed normal results. (R. at 328, 332–34.)  An x-ray of his right shoulder also came back as normal.  (R. at 336.)  However, the x-ray of his lumbar spine revealed severe degenerative osteoarthritic changes with narrowing of the L5-S1 and L4-L5 intervertebral disc spaces, anterior osteophytic spurring, and sclerosis in the left sacroiliac joint.  (R. at 335.)

A state medical consultant considered Hastings's medical records and opined on June 29, 2011, that Hastings could occasionally lift and carry twenty pounds, frequently lift and carry ten pounds, and had additional limitations on his ability

to stand and reach. (R. at 77-78.) On November 4, 2011, after reviewing updates to Hastings's medical record, including the May 2011 x-rays, a second medical consultant reached the same conclusion about Hastings's RFC. (R. at 82-94.)

At an exam on September 8, 2011, Hastings complained of pain in his right shoulder. (R. at 403.) The doctor found that Hastings was tender in this area but also had flexion of 150°, abduction of 140°, extension of 30°, external rotation of 60°, internal rotation of 55°, and adduction of 20°. (R. at 407.) Additionally, his cervical spine was not tender and was aligned; although, there was tenderness in the neck. (R. at 407-08.)

On November 9, 2011, Hastings visited the office of Dr. Reddy complaining of shoulder pain with a decreased range of motion, back pain, and a burning in the left side of his groin. (R. at 431.) Hastings was not in apparent distress and had no lumbar spine tenderness but did have tenderness in his right shoulder with a moderately reduced range of motion. (R. at 432.) The physician's assistant indicated that Hastings would need the clavicle plate removed due to pain. (R. at 431.) However, by March 23, 2012, an x-ray of Hastings's right clavicle showed interval healing when compared to his May 2011 x-ray. (R. at 428.)

On April 3, 2012, Hastings returned to Dr. Reddy's office complaining of back pain and a skin irritation. (R. at 433.)

Hastings was not in apparent distress and had an external rotation in his right shoulder of 80° and an internal rotation of 90°. (R. at 434.)

X-rays taken of Hastings's lumbar spine on May 30, 3012, showed no significant misalignment but did show hyperlordosis, osteopenia, and hypertrophic degenerative spondylosis involving the L3-S1 and, to a lesser degree, the L1-L2 vertebrae and intervertebral elements. (R. at 441.)

Hastings went to an emergency room June 21, 2012, complaining of an abdominal pain that the attending physician thought might be caused by a hernia. (R. at 411–13.) A CT scan showed no evidence of a hernia. (429–30.)

Hastings's last visit to Dr. Reddy's office was on June 26, 2012. (R. at 436.) He was in no apparent distress but did have back pain and "bone/joint symptoms." (R. at 437.) Contrary to the findings of the CT scan five days before, the physician's assistant noted that he had a non-reducible scrotal hernia. (Id.) On July 5, 2012, Hastings went to the Riverside County Regional Medical Center and was informed that he did not have a hernia. (R. at 251, 410–11.)

Dr. Reddy filled out an RFC evaluation for Hastings on November 7, 2012. (R. at 442–45.) On this form Dr. Reddy indicated that Hastings had been to his office three times since November 11, 2011. (R. at 442.) In response to a question

about whether Dr. Reddy had sufficient knowledge of Hastings's medical history to provide an informed opinion about his RFC prior to Hastings's first visit, Dr. Reddy answered in the negative. The majority of Dr. Reddy's responses on this form consist of checked boxes. Dr. Reddy checked Hastings could lift and carry five pounds frequently, ten pounds occasionally, and could never lift or carry anything greater than that. (R. at 443.) He checked that Hastings could use both hands for simple grasping, only his left hand for lifting and carrying, and both hands for fine manipulation. (Id.) He checked that Hastings could occasionally bend and squat but never crawl or climb. (R. at 444.) He stated that Hastings's side effects from his Vicodin prescription included a clouded mind, dizziness, and drowsiness. (Id.) Dr. Reddy then checked that Hastings could not maintain a customary and appropriate work pace, would have difficulties maintaining the attention necessary for simple tasks, and would likely miss at least two days per twenty-day work month. (Id.) In the section for the objective evidence supporting his opinions, Dr. Reddy wrote two words: x-rays and PMHx. (R. at 445.) Dr. Reddy stated that Hastings could not work full time because he would continue to have right shoulder pain and weakness. (Id.)

In step four of his analysis, the ALJ summarized Hastings's medical records with great detail — laying out the chronology of

his treatment and individually discussing over a dozen different exams, tests, and doctor's visits. (R. at 24–25.) Having reviewed the record, the ALJ stated that he gave "significant weight, but not full weight" to the opinions of Dr. Flanagan and the state medical consultants because they were generally consistent with each other and the record. (R. at 25.) The ALJ clarified that he did not rely on any single assessment when making the RFC determination. (Id.) The ALJ then rejected Dr. Reddy's opinion with the explanation that (1) "the statement was made in anticipation of litigation," (2) it was a checklist-style opinion, (3) three visits did "not qualify as a [lengthy] history of treatment," (4) Dr. Reddy's medical findings did not support his opinions, (5) nothing in the medical record supported Dr. Reddy's conclusion that Hastings could not maintain the appropriate work pace, and (6) Dr. Reddy's opinion was not supported by other objective clinical evidence. (R. at 26.) Ultimately, the ALJ concluded that Hastings had the RFC to

> lift and/or carry 20 pounds occasionally and 10 pounds
> frequently; he can stand and/or walk for six hours out
> of an eight-hour workday with regular breaks; he can
> sit for six hours out of an eight-hour workday with
> regular breaks; he must have a sit/stand option at 30
> minute intervals; he is unlimited with respect to
> pushing and/or pulling, other than as indicated for
> lifting and/or carrying; he is limited to occasional
> climbing and balancing; he cannot stoop or crouch; he
> cannot reach with the upper right extremity; he can
> occasionally handle and finger with the right hand;
> and he must avoid hazards such as machinery and
> heights.

(R. at 22.)

Treating sources are accepted medical sources who have or have had an "ongoing treatment relationship" with a claimant. 20 C.F.R. § 404.1527(a)(2). The SSA deems a relationship to be an ongoing treatment relationship when a claimant has visited with a treating source "with a frequency consistent with accepted medical practice for the type of treatment and/or evaluation required for [the claimant's] medical condition(s)." Id. The burden is on the claimant to prove that this relationship exists. Grisier v. Comm'r of Soc. Sec., No. 17-3570, 2018 WL 417557, at *2 (6th Cir. Jan. 16, 2018). Should the claimant meet this burden, the ALJ will then assess whether the treating source's opinion is consistent with the medical records and is well-supported by clinical and laboratory diagnostic techniques. 20 C.F.R. § 404.1257(c)(2). If it is, the ALJ will give the opinion controlling weight; if it is not, the ALJ will apply a set of regulatory factors to the opinion to determine what weight to give it. Id. ALJs will "always give good reasons" in their decisions for the weight that they gave the treating source. Id.

Hastings claims Dr. Reddy was his treating physician and, furthermore, argues that the ALJ should have adopted Dr. Reddy's lifting and carrying limitations. The Commissioner responds

that three visits are not sufficient to create a treating relationship and, regardless, the ALJ gave good reasons for rejecting Dr. Reddy's opinion.

### 1. Whether Dr. Reddy was a Treating Physician

In this case, the ALJ did not determine whether Dr. Reddy had a treating relationship with Hastings, stating only that three visits did not constitute a lengthy history of treatment. (R. at 26.) "[O]ne-off evaluations generally do not qualify a medical source as a 'treating source.'" Grisier, 2018 WL 417557, at *2. Also questionable are purported treating relationships based upon two or three exams spread out over a long period of time. See Downs v. Comm'r of Soc. Sec., 634 F. App'x 551, 555 n.2 (6th Cir. 2016). However, as mentioned, the key consideration is whether the frequency of visits is consistent with the accepted medical practice. See Grisier, 2018 WL 417557, at *2. Here, there is insufficient information in the record and briefing for the court to determine whether Hastings saw Dr. Reddy at a typical frequency for someone with his medical conditions. Accordingly, Hastings has not met his burden for demonstrating that a treating relationship existed. Id. Nonetheless, assuming for the sake of argument that Dr. Reddy was a treating source, the court will next assess the sufficiency of the reasons the ALJ provided to justify the weight given to Dr. Reddy's opinion.

2. <u>Whether the ALJ Gave Good Reasons for Rejecting Dr. Reddy's Opinion</u>

When considering what weight to give an opinion from a medical source, ALJs apply a set of factors to the opinion. Those factors include the length and nature of the relationship, the frequency of exams, the evidence upon which the medical source bases her or his opinion, the opinion's consistency with the record as a whole, whether the source has specialized in her or his area of practice, and any other relevant factor, like the source's familiarity with the claimant's full medical record. 20 C.F.R. § 404.1527(c)(2)-(6).

The first reason the ALJ provided for rejecting Dr. Reddy's opinion is that it was made in anticipation of litigation. Hastings argues that this was an illogical basis for the ALJ to dismiss Dr. Reddy's opinion because such opinions are a key part of the disability adjudication process. On this point, the court agrees with Hastings. Generally, all medical opinions in a claimant's record, including those written by the state consultants, are written in anticipation of litigation. The SSA still treats these opinions as valuable to the disability determination process. <u>See</u> 20 C.F.R. § 404.1257(b) ("[W]e will always consider the medical opinions in your case record together with the rest of the relevant evidence we receive."). The Commissioner contends that the ALJ actually meant that a

relationship based solely upon the need for a disability report is not a treating relationship. However, in his analysis, the ALJ found fault with the "statement" being prepared in anticipation of litigation, which belies the Commissioner's argument. Thus, the court finds that the ALJ's first reason for disregarding Dr. Reddy's opinion was not a valid reason.

The ALJ's next reason for rejecting Dr. Reddy's opinion was that it was a checklist style opinion. Hastings argues it is irrelevant that the opinion was in checklist form because what mattered was whether the opinion was supported by the record. "While checklist opinions are not per se unreliable in this context, it is not improper for an ALJ to take into consideration the format of a medical opinion, especially in light of other factors in the record that signal unreliability." Kepke v. Comm'r of Soc. Sec., 636 F. App'x 625, 630 (6th Cir. 2016); Ellars v. Comm'r of Soc. Sec., 647 F. App'x 563, 566-67 (6th Cir. 2016). In his analysis, ALJ provided several other factors indicating unreliability. Therefore, the court finds that this was a valid reason for discounting the opinion.

The ALJ's third reason, Hastings's sparse number of visits to Dr. Reddy's office, while important to determining the existence of a treating relationship, is also a valid basis for giving an opinion little weight. See 20 C.F.R. § 404.1527(c)(2)(i). The ALJ's fourth reason was that the records

of Hastings's visits to Dr. Reddy do not support the severity of the recommendation in Dr. Reddy's opinion.  The records of the three visits indicate that Hastings was in no apparent distress and provide scant information about the severity of his symptoms.  This evidence does not support the limitations set out in Dr. Reddy's opinion.  See Edwards v. Comm'r of Soc. Sec., 636 F. App'x 645, 649 (6th Cir. 2016)(finding that "the ALJ provided adequate reasons for discounting the extremely limited physical capacity assessment provided by the treating physician" when the treating physician's treatment notes lacked "clinical findings . . . that would support such extreme limitations").  Regarding the ALJ's fifth reason, that the record lacks support for Dr. Reddy's conclusion that Hastings could not work at an appropriate pace, the court has not found and Hastings has not identified any evidence to negate this explanation.

Hastings raises several arguments against the ALJ's final reason for rejecting Dr. Reddy's opinion, that the opinion was contradicted by the evidence on the record.  According to Hastings, the record does support Dr. Reddy's lifting and carrying limitation because (1) the evidence showed neck and spine problems, (2) Hastings had a hernia, (3) the record showed he would need another surgery on his shoulder, and (4) the medical opinions in the record upon which the ALJ did rely were of little value.

"If the Commissioner's decision is supported by substantial evidence, [courts] must uphold it, even if substantial evidence also supports the opposite conclusion." Nettleman v. Comm'r of Soc. Sec., No. 17-1443, 2018 WL 862533, at *2 (6th Cir. Feb. 14, 2018). While ALJs may not "cherry pick[] evidence," they may "neutrally . . . weigh[] the evidence." White v. Comm'r of Soc. Sec., 572 F.3d 272, 284 (6th Cir. 2009). In his analysis, the ALJ weighed the evidence that could support Dr. Reddy's opinion, such as the x-rays showing degenerative osteoarthritic developments in Hastings's spine, against the evidence that undermined Dr. Reddy's opinion, such as Hastings's only moderately reduced range of motion. The range of motion evidence is what swayed the ALJ. Thus, despite the evidence opposing his decision, the ALJ's decision was still supported by substantial evidence.

That the ALJ did not mention Hastings's purported hernia or need for a third surgery does not undermine the opinion. There was little evidence in the record to support either of these points; two different medical sources told Hastings that he did not have a hernia and the need for a third surgery was not mentioned again after November 2011. Additionally, when explaining the reasons for the weight he gave Dr. Reddy's opinion, the ALJ was not obligated to include "an exhaustive factor-by-factor analysis." See Kepke, 636 F. App'x at 630

(quoting Francis v. Comm'r Soc. Sec. Admin., 414 F. App'x 802, 804 (6th Cir. 2011)).

Hastings also argues that Dr. Flanagan's and the state medical consultants' opinions were unsound bases for disregarding Dr. Reddy's opinion — Dr. Flanagan's because it was inherently contradictory and the state consultants' because they were based upon an incomplete medical record. Regarding Dr. Flanagan's opinion, Hastings suggests that the ALJ impermissibly applied a greater level of scrutiny to Dr. Reddy's opinion than to Dr. Flanagan's and relies on Gayheart v. Commissioner of Social Security to support his argument. See 710 F.3d 365, 379 (6th Cir. 2013)("Although the ALJ was quite critical of the alleged inconsistencies between [the treating doctor's] opinions and other record evidence, his decision does not acknowledge equivalent inconsistencies in the opinions of the consultative doctors."). Hastings is correct that "the opinions of physicians or psychologists who do not have a treatment relationship with the [claimant] are weighed by stricter standards, based to a greater degree on medical evidence, qualifications, and explanations for the opinions, than are required of treating sources." SSR 96-6p, 1996 WL 374180, at *2 (July 2, 1996). He is also correct that Dr. Flanagan's opinion was, at times, inconsistent. For example, it was inconsistent for Dr. Flanagan to note that Hastings had limited range of

motion and pain in his back and subsequently opine, without explanation, that he had no postural limitations. However, while the ALJ did not explicitly acknowledge these inconsistencies, it appears he did so implicitly. The ALJ specified that he did not completely adopt Dr. Flanagan's opinion, and in the RFC determination, the ALJ included postural limitations against stooping and crouching. Thus, the court finds that the ALJ did not err when giving Dr. Flanagan's opinion more weight than Dr. Reddy's.

With respect to the opinions of the state consultants, both opinions were written in 2011 and, therefore, based upon incomplete medical records. In the event that a "non-examining source did not review a complete case record, '[the Sixth Circuit] require[s] some indication that the ALJ at least considered these facts before giving greater weight to an opinion' from the non-examining source" than to the opinion of a treating or examining source. <u>Miller v. Comm'r of Soc. Sec.</u>, 811 F.3d 825, 834 (6th Cir. 2016)(quoting <u>Blakley v. Comm'r Of Soc. Sec.</u>, 581 F.3d 399, 409 (6th Cir. 2009)). The ALJ did not explicitly state that he considered when the state consultants wrote their opinions; yet, it would be reasonable to infer from the meticulous listing of dates in the ALJ's analysis that he was aware of the dates on these opinions. Additionally, the ALJ's analysis complied with the purpose of the date-

consideration requirement. This requirement ensures that ALJs do not rely on opinions that have been rendered out-of-date by new medical evidence. See Blakley, 581 F.3d at 409 (citing Fisk v. Astrue, 253 F. App'x 580, 585 (6th Cir. 2007)). Here, there is no such evidence. Hastings points to his hernia, his need for a third surgery, and Dr. Reddy's opinion as the new medical developments that the consultants would have considered. For the reasons already discussed above, the court finds unpersuasive the arguments about the purported hernia and need for a third surgery. As for Dr. Reddy's opinion, given the number of faults that the ALJ found with the opinion, there is little reason to believe that it would have had a significant impact on the state consultants' opinions. Thus, the court finds that the ALJ met all procedural and evidentiary requirements when assigning a weight to Dr. Reddy's opinion.

## D.    The ALJ's Assessment of Hastings's Credibility

Hastings disputes the ALJ's decision to deem his description of his condition not credible. In his function report and testimony at the hearing, Hastings provided the ALJ with a detailed account of his various symptoms. Concerning his back, he stated that, approximately four times a month, he had a stabbing pain that ran from his back through his leg and, when the pain flared, he would be debilitated for four to five days — unable to do anything except lay down with his legs elevated.

(R. at 45, 55.) He explained that he had three distinct types of pain in and around his shoulder: a numbing, grinding pain at the end of his shoulder, a pain in his clavicle that ran into his neck and back, and a pain at the end of the clavicle plate that felt like the plate was colliding with his bone. (R. at 46.) The clavicle pain was constant with flares that lasted four to five days at the time, while the other pains were aggravated by any repetitive motion. (Id.)

Hastings described his condition as impacting every aspect of his life. He said he was unable to use his right arm "for much of anything." (R. at 202.) His pain woke him up "10 plus times per night"; made dressing and hygiene difficult (although he had learned to compensate with his left hand); and impacted his ability to lift, squat, bend, stand, reach, walk, sit, kneel, climb stairs, complete tasks, concentrate, or get along with others. (R. at 47, 52, 202-06.) At the hearing, he explained that he used his left hand to hold up his right elbow when he was sworn in because, otherwise, he would not have been able to keep his arm up. (R. at 47-48.) Despite his physical condition, he indicated that he could still vacuum, fold certain items of laundry, grocery shop, occasionally talk on the phone, visit with friends, barbeque on the grill and make other small meals, take his son to school and care for him after school,

tidy the house, perform some yardwork, drive a car, and handle
financial matters.  (R. at 41-43, 54-55, 203-04.)

The ALJ found that, while Hastings's condition caused some
of the alleged symptoms, Hastings's description of the
intensity, persistence, and limiting effects of his symptoms was
not credible.  (R. at 23.)  The ALJ pointed out that Hastings's
medical record lacked evidence of regular treatment or emergency
room visits for back pain that might support his statements
about the severity and duration of his back pain.  (Id.)  Nor
did the record contain objective findings, such as a seriously
reduced range of motion, which might support his claims.  (R. at
23-24.)  The record also did not support his claims about his
limited use of his arm, showing instead that his shoulder was
improving.  (Id.)

Hastings argues first that the ALJ erred by relying solely
on objective medical evidence as the basis for dismissing
Hastings's subjective description of his symptoms.  Next
Hastings argues that, since his x-rays showed severe
degenerative osteoarthritic changes and since his records
indicated he needed a third surgery, the objective evidence
supported his descriptions.  Finally, Hastings argues that, in
addition to objective medical evidence, the ALJ should have
considered whether his daily activities supported his claims and
whether his prior work history boosted his credibility.

The Sixth Circuit has "'held that an administrative law judge's credibility findings are virtually unchallengeable' absent compelling reasons." Shepard v. Comm'r of Soc. Sec., 705 F. App'x 435, 442 (6th Cir. 2017) (quoting Ritchie v. Comm'r of Soc. Sec., 540 F. App'x 508, 511 (6th Cir. 2013)). Those compelling reasons appear when ALJs' credibility determinations are not "supported by substantial evidence." Rogers, 486 F.3d at 249. When making a credibility determination, ALJs "must consider the entire case record and give specific reasons for the weight given to the individual's statements." SSR 96-7p, 1996 WL 374186, at *4 (July 2, 1996).[3] In the event that "an individual's statements about pain or other symptoms are not substantiated by the objective medical evidence, the adjudicator must consider all of the evidence in the case record . . . ." Id.; 20 C.F.R. § 404.1529(c)(2). Beyond objective medical

---

[3]This court previously found that SSR 16-3p, the SSA's new ruling on assessing a claimant's subjective complaints, applied to judicial review of ALJ opinions predating March 28, 2016. See Patterson v. Colvin, No. 13-CV-1040-JDB-TMP, 2016 WL 7670058, at *6-9 (W.D. Tenn. Dec. 16, 2016), report and recommendation adopted, No. 13-1040, 2017 WL 95462 (W.D. Tenn. Jan. 10, 2017). But, the SSA recently republished SSR 16-3p and clarified that, while ALJs are to apply SSR 16-3p to any determination or decision that they make after March 28, 2016, the SSA expects reviewing courts to apply the "rules that were in effect at the time we issued the decision under review." SSR 16-3p, 2017 WL 5180304 *13 n.27 (Oct. 25, 2017). The ALJ's decision in this case is dated November 21, 2012. Hence, this court will assess the ALJ's compliance with 96-7p. See Adams v. Berryhill, No. 7:17-CV-98-EBA, 2018 WL 473016, at *6 (E.D. Ky. Jan. 18, 2018) (noting that the republished ruling requires the court to apply 96-7p).

evidence, the SSA has identified several types of evidence that ALJs should consider. These include the claimant's daily activities; the location, duration, frequency, and intensity of the symptoms; aggravating factors; type, dosage, effectiveness, and side effects of medications; treatment other than medication that the claimant receives; and any other information relevant to these symptoms. 20 C.F.R. § 404.1529(c)(3)(i)–(vii).

The ALJ provided two bases for his finding that Hastings's description of his condition was not credible: the objective medical evidence in the record and the absence of serious treatment. These two reasons are sufficient to meet the regulatory requirements. See Moore v. Comm'r of Soc. Sec., 573 F. App'x 540, 542 (6th Cir. 2014)(finding that substantial evidence supported an ALJ's decision when, among other reasons, the ALJ explained that the claimant's description of the severity of her condition was undermined by the lack of emergency room visits); see also Winslow v. Comm'r of Soc. Sec., 566 F. App'x 418, 422 (6th Cir. 2014)(upholding an ALJ's credibility determination because it was based upon two considerations: conflicts with objective medical evidence and conflicts with credible medical source opinions); Kirkland v. Comm'r of Soc. Sec., 528 F. App'x 425, 427 (6th Cir. 2013)(same).

Additionally, the objective medical evidence upon which the ALJ relied supported his determination. Although the x-rays showed osteoarthritic degeneration, the ALJ observed that the evidence showed little diminished range of motion. (R. at 23.) Furthermore, as discussed in the prior section, the record lacked clear evidence that Hastings did, in fact, need a third surgery. Finally, while it may have been helpful for the ALJ to analyze what impact Hastings's daily activities and work record had upon his credibility, it was not necessary in this case. Staymate v. Comm'r of Soc. Sec., 681 F. App'x 462, 470 (6th Cir. 2017) ("[A]n ALJ need not discuss every piece of evidence in the record for his decision to stand."). Thus, the court finds that the ALJ's credibility determination complied with procedural requirements and was supported by substantial evidence.

### III. CONCLUSION

For the foregoing reasons, the Commissioner's decision that Hastings is not disabled is affirmed.

IT IS SO ORDERED.

s/ Tu M. Pham
TU M. PHAM
United States Magistrate Judge

March 28, 2018